RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 12 / 7 / 11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| GREGORY ANDERSON COUTEE,<br>          Petitioner | CIVIL ACTION<br>SECTION "P"<br>1:11-CV-00409 |
| VERSUS | |
| WARDEN, LOUISIANA STATE<br>PENITENTIARY,<br>          Respondent | JUDGE JAMES T. TRIMBLE<br>MAGISTRATE JUDGE JAMES D. KIRK |

REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by pro se petitioner Gregory Anderson Coutee ("Coutee") on March 15, 2011.  Coutee is contesting his 2006 conviction, by a jury in the Louisiana Ninth Judicial District Court in Rapides Parish, on one count of first degree robbery, for which he was sentenced to 40 years imprisonment.  Coutee is presently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.

Coutee raises the following grounds for habeas relief in his petition:

   1. The evidence was insufficient to convict Coutee of first degree robbery.

   2. The trial judge erred in denying Coutee's motion to suppress.

   3. Coutee was not properly advised of and did not knowingly waive his Miranda rights.

   4. The trial judge erred in allowing the prosecutor to

knowingly use perjured testimony.

5. The trial judge erred in relying on the hearsay report of an intake triage nurse instead of the diagnosis of a physician/expert in denying Coutee's motion to suppress.

6. The trial judge erred in denying Coutee's motion to suppress his inculpatory statement and illegally seized evidence, when a known fraud on the court led the judge to believe Coutee was not intoxicated or in medical distress and voluntarily waived his Miranda rights.

7. Coutee had ineffective assistance of trial counsel.

8. The trial judge erred in failing to prevent the prosecutor's repeated improprieties; thus, the accumulation of trial errors denied Coutee the right to a fair and impartial trial.

The Respondent filed a brief in response to Coutee's petition (Doc. 8). Coutee alleges and the Respondent does not dispute exhaustion of his state court remedies. Coutee's habeas petition is now before the court for disposition.

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. <u>Moya v. Estelle</u>, 696 F.2d 329, 332-33 (5th Cir. 1983); <u>Easter v. Estelle</u>, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a

person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). Martin v. Cain, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a

3

result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. Martin, 246 F.3d at 476, and cases cited therein.

### Facts

The facts of this case as set forth by the Louisiana Third Circuit Court of Appeal in State v. Coutee, 07-568 (La. App. 3d Cir. 10/31/07), 970 So.2d 72, 73-76, writ denied, 2008-KO-0007 (La. 5/16/08), 980 So.2d 708, are as follows:

> "On January 23, 2006, the Defendant entered the Lexington Self Storage and robbed the owner, David Paulk, who was working that day. The Defendant was found that same day at the residence of Nicole Howard and was subsequently arrested on outstanding warrants. After the Defendant was read his Miranda rights, he confessed to the robbery and informed officers where the stolen items, a wallet and checkbook, could be found in the residence. Ms. Howard gave her consent to search the residence, and the stolen items were retrieved.
>
>     *    *    *
>
> "The victim, David Paulk, testified that he was working at his business, Lexington Self Storage, on the morning of January 23, 2006. He explained that around 10:00 a.m., the Defendant entered the business and inquired about renting a storage space. Mr. Paulk informed the Defendant that he did not have any of the size requested available. The Defendant left the building, and Mr. Paulk assumed that the Defendant had driven out [of] the parking lot. Instead, the Defendant drove back behind the storage buildings and parked his vehicle between the buildings, out of Mr. Paulk's sight.
>
> "Next, the Defendant entered the business again and asked Mr. Paulk to loan him twenty dollars. Mr. Paulk refused, and the Defendant asked him again. When Mr. Paulk refused the second time, Mr. Paulk testified that the Defendant jumped at him, grabbed him, pulled him up out of his chair and threw him in a storage closet. Mr. Paulk was fearful from the moment the Defendant first grabbed him

because the Defendant was a much larger man and was a stranger to him. Mr. Paulk testified that he was 5'6" tall and weighed 170 pounds, whereas he believed the Defendant to be about 6'2" tall and weighing 240 pounds. At the time the Defendant was booked, he measured 6'0" tall and 245 pounds.

"According to Mr. Paulk, the storage room was very well lit. Mr. Paulk hit the wall in the storage room with enough force to bust a hole in the sheetrock. Photographs of the storage closet and damage to the sheetrock were submitted into evidence as exhibits 6, 7, 11, 28, and 29. The Defendant subsequently got Mr. Paulk down on the floor and tied Mr. Paulk's hands behind his back with speaker wire he pulled off an old computer in the storage room. Mr. Paulk was able to break loose and the Defendant pulled the speaker wire off another computer and tied Mr. Paulk up again. As the men continued to fight in the closet, the Defendant got Mr. Paulk down on the floor and tied him up again with a piece of electrical wiring. The Defendant was on Mr. Paulk's back with Mr. Paulk's face down and his head against the floor. At that time, Mr. Paulk saw the Defendant reach behind himself and pull something from his waistband or a pocket. At that time, Mr. Paulk believed, without a doubt, that the Defendant was armed with a weapon. Mr. Paulk could not identify the object, only that it was brown colored. He thought the object was either the butt of a gun or a knife. Mr. Paulk was unable to look up and exactly identify the object. Mr. Paulk stated that the Defendant did not touch him with the object, such as touching him with the tip of a gun or holding a knife against his neck. Additionally, nothing was demanded of Mr. Paulk during the time the Defendant was holding the object and the Defendant never said that he had a weapon while they were in the storage room.

"Mr. Paulk stated that he believed that the Defendant was going to kill him, so he decided to stop fighting in hopes that the Defendant would take what he wanted and leave the building. He was not sure what the Defendant did with the object, but speculated that the Defendant put it back in his pocket or waistband.

"Mr. Paulk testified that, at that time, the Defendant took his wallet and checkbook from his pocket and some cash that was on his desk. Next, the Defendant told Mr. Paulk that he was getting his gun and was going to kill

5

him, then ran out of the door. Mr. Paulk believed at that time that the Defendant had the power to execute the threat. Mr. Paulk explained that the Defendant went back behind the building, got in his truck, and drove away. After freeing himself, Mr. Paulk observed the direction in which the Defendant was driving and called 911 and reported the crime.

"Corporal Kenneth Rachal of the Alexandria Police Department was dispatched to the crime scene and interviewed Mr. Paulk. Upon learning that the assailant left the scene in a brown Suburban and the direction it was headed, Corporal Rachal instructed Officer Ducote to see if he could locate the vehicle. Corporal Rachal joined Officer Ducote after locating the vehicle at a residence of Nicole Howard and the officers learned that the vehicle belonged to the Defendant and that the Defendant was inside the residence. The Defendant came out of the house, was informed of his Miranda rights, arrested for outstanding warrants, and placed in the back of a police unit. At that time, the Defendant told the officers where the stolen items were located. After officers were given consent by Ms. Howard to search the residence, the items were retrieved from the exact locations as reported by the Defendant. Corporal Rachal testified that, when searching the residence for the stolen items, he did not look for a weapon at that time.

"Officer Douglas Prestridge of the Alexandria Police Department testified that he was dispatched to the scene of the crime around 10:00 a.m. Officer Prestridge did not find a weapon at the crime scene. Detective Stephen Constantino testified that the Defendant's vehicle was thoroughly searched and a weapon was not found. Officer James David King was present when the Defendant disrobed at the hospital, and he testified that no weapon was found."

## Ground 1 - Sufficiency of the Evidence

Coutee contends the evidence was insufficient to convict him of first degree robbery because there was no evidence that Coutee was armed with a weapon.

Habeas relief on a claim of insufficient evidence is

appropriate only if it is found that, upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. West v. Johnson, 92 F.3d 1385 (5th Cir. 1996), cert. den., 520 U.S. 1242, 117 S.Ct. 1847, 137 L.Ed.2d 1050 (1997), citing Jackson v. Virginia, 443 U.S. at 322-26, 99 S.Ct. at 2791-92. To apply this standard, the court looks to elements of the offense as defined by state substantive law. Donahue v. Cain, 231 F.3d 1000, 1004 (5th Cir. 2001). All credibility choices and conflicting inferences are to be resolved in favor of the verdict. A determination of a factual issue made by a State court shall be presumed correct, and the petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. Ramirez v. Dretke, 398 F.2d 691, 693 (5th Cir. 2005).

The habeas corpus statute obliges federal judges to respect credibility determinations made by the trier of fact. Sumner v. Mata, 455 U.S. 591, 597, 102 S.Ct. 1303, 1306, 71 L.Ed.2d 480 (1982). Also, Pemberton v. Collins, 991 F.2d 1218, 1225 (5th Cir.), cert. den., 510 U.S. 1025, 114 S.Ct. 637, 126 L.Ed.2d 596 (1993). The habeas corpus statute provides that a state court's factual determination must be presumed correct "unless ...the federal court concludes that such factual determination is not supported by the record." 28 U.S.C. S 2254(d).

Under Louisiana law, first degree robbery is the taking of

something of value from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.  LSA-R.S. 14:64.1(A).  The statute has objective and subjective components.  It requires the state to prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon, and that the victim's belief was objectively reasonable under the circumstances.  The statute thus excludes unreasonable panic reactions by the victim but otherwise allows the victim's subjective beliefs to determine whether the offender has committed first degree robbery or the lesser offense of simple robbery in violation of La.R.S. 14:65. State v. Byrd, 385 So.2d 248 (La. 1980).  Direct testimony by the victim that he believed the defendant was armed, or circumstantial inferences arising from the victim's immediate surrender of his personal possessions in response to the defendant's threats, may support a conviction for first degree robbery.  State v. Fortune, 608 So.2d 148, 149 (La. 1992).  No weapon need ever be seen by the victim, or witnesses, or recovered by the police for the trier of fact to be justified in finding that in fact the defendant was armed with a dangerous weapon.  State v. Elam, 312 So.2d 318, 322 (La. 1975)(armed robbery case).

Coutee argues he was not armed, and that the victim testified the only time a gun was mentioned was when, as the assailant was

8

leaving, he told the victim (Paulk) he was getting a gun to kill him.  However, the Paulk testified that after he had unsuccessfully fought Coutee and was tied up and lying face down on the floor with Coutee sitting on his back, he saw Coutee pull something out of his waistband or pocket.  Paulk testified he thought he saw either a knife or the butt of a gun and believed Coutee was armed, so he gave up fighting him any further at that point.  Paulk admitted he was unable to see the object clearly, and that Coutee never touched him with the weapon and never said he was armed, but Paulk stated that he believed Coutee was going to kill him.

The state courts found that Paulk reasonably believed, based on Coutee's actions, that Coutee was armed with a dangerous weapon; that factual finding and credibility determination is presumed to be correct.  Coutee has not carried his burden of proving the state courts' decisions were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings or that, based upon the evidence adduced at trial, no rational trier of fact could have found proof of Coutee's guilt of first degree robbery beyond a reasonable doubt.

This ground for relief is meritless.

Grounds 2, 3, 5, & 6 - Motion to Suppress

Coutee contends the trial judge erred in denying his motion to suppress his inculpatory statements to the police.  Coutee argues he was not properly advised of and did not knowingly waive his

Miranda rights due to his intoxication at the time. Coutee also argues that, in denying his intoxication argument and motion to suppress, the trial judge erred in relying on the hearsay report of an intake triage nurse instead of the diagnosis of a physician/expert (presumably one that indicated Coutee had smoked crack). Coutee further contends the trial judge erred in denying Coutee's motion to suppress his inculpatory statement and illegally seized evidence, when a known fraud on the court led the judge to believe Coutee was not intoxicated or in medical distress and voluntarily waived his Miranda rights.

Coutee's attorney filed motions to suppress his statements to the police on the basis that Coutee had smoked crack cocaine shortly before he was arrested on January 23, 2006 and thus was unable to knowingly consent to waive his rights when he spoke to the police (Doc. 8-1, pp. 14/100, 20/100). A hearing was held on Coutee's motion to suppress on August 28, 2006 (Doc. 8-5, p. 1/53).

Detective Darrell Thiels of the Alexandria Police Department testified at the motion to suppress hearing that Coutee was arrested the same day the robbery took place (Doc. 8-5, p. 6/53). Thiels testified that Coutee was arrested by Alexandria crime scene officers Kenny Rachal and Ernie Gleason (Doc. 8-5, p. 7/53). Detective Thiels testified that Coutee complained of chest pains after he was arrested, so the arresting officers called emergency medical services to take Coutee to Huey P. Long Hospital (Doc. 8-5,

p. 8/53).  Detective Thiels testified that he did not think Coutee was under the influence of drugs or alcohol because he appeared to be able to understand everything that was going on, although he noticed Coutee was sweating profusely (Doc. 8-5, pp. 8-11/53). Detective Thiels testified that he thought Coutee was sweating heavily because he was nervous and the day was unseasonably warm; Coutee did not tell Thiels he had taken drugs and no crack cocaine or drug paraphernalia were found (Doc. 8-5, p. 9/53).

Detective Thiels testified that Coutee was Mirandized[1] by Officer Rachal before Thiels arrived but did not sign a waiver of rights form at that time, and Thiels later prepared a Miranda form for Coutee's paperwork (to book him into jail) which Coutee did not sign because he had left in the ambulance (Doc. 8-5, p. 9-10/53, 12/53).

Detective Thiels further testified that written consent to search the residence where Coutee was arrested was obtained from the tenant of the residence, Nicole Howard (Doc. 8-5, pp. 13-15/53).  The wallet, checkbook and some cash that were taken in the robbery were found in the residence (Doc. 8-5, p. 13/53).

Officer Kenneth Rachal testified that he arrested Coutee on January 23, 2006 (Doc. 8-5, p. 17/53).  Officer Rachal testified that the robbery occurred in early afternoon (Doc. 8-5, p. 17/53),

---

[1] Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 (1966).

the vehicle Coutee used was identified at the robbery, and Coutee was arrested later that day on an outstanding warrant (Doc. 8-5, pp. 18-20/53).

Officer Rachal testified that he Mirandized Coutee verbally, and Coutee appeared to understand his rights and did not appear to be under the influence of alcohol or drugs (Doc. 8-5, Tr. p. 22/53). Officer Rachal testified that Coutee did not invoke his rights to remain silent or to counsel (Doc. 8-5, p. 21/53). Officer Rachal testified that he advised Coutee of his rights before he was placed in the back of the police car because Coutee indicated he wanted to talk to the officers; after he was advised of his rights and placed in the police car, Coutee told the officers where they could find stolen property in the residence (Doc. 8-5, pp. 22/53, 30/53). Officer Rachal testified that, after the tenant signed the consent to search, they found clothes, a checkbook, a wallet, and the victim's money (Doc. 8-5, p. 25/53). Officer Rachal testified that no drugs or drug paraphernalia were located (Doc. 805, p. 23/53).

Rachal further testified that Coutee was speaking well, conveying his thoughts in complete sentences, using good English, and his speech was not really slurred; Coutee appeared nervous but did not appear to be high (Doc. 8-5, p. 23/53, 27/53). About fifteen to twenty minutes after Officer Rachal arrived, when Coutee was sitting in the police car, Coutee complained of chest pains

12

(Doc. 8-5,p. 31/53).

Sergeant Ernie Gleason of the Alexandria Police Department testified that he had been contacted by someone who complained her vehicle had been taken by Coutee and provided information of Coutee's possible location in the area; a warrant had previously been issued for Coutee for unauthorized use of that vehicle (Doc. 8-5, pp. 32-33/53). Sgt. Gleason testified he then went to the scene of the robbery to see if he could assist, heard the culprit's description and his possible location, went there and recognized Coutee on the porch; Officer Rachal was already there. Sgt. Gleason testified that he arrested Coutee on the outstanding warrant for unauthorized use of a vehicle (Doc. 8-5, pp. 33/53, 38/53).

Sgt. Gleason testified that he was present when Officer Rachal Mirandized Coutee and stated that Coutee did not appear to be disoriented or under the influence of crack cocaine, was able to respond intelligibly to questions, did not invoke his rights to an attorney or to remain silent, and appeared to make his statements freely and voluntarily (Doc. 8-5, pp. 34-35/53, 38/53, 40/53). Sgt. Gleason testified that, after Coutee was placed in the back of the police car, he began sweating and acting like he was in distress, telling the officers it was "his heart" and complaining of chest pains (Doc. 8-5, pp. 35-36/53). Sgt. Gleason further testified that Coutee did not state he had been using drugs or

alcohol, and that no drugs or drug paraphernalia were found after in the residence after Ms. Howard signed the consent to search form (Doc. 8-5, pp. 36-37/53).

Coutee did not testify at the hearing, but presented the medical records from Huey P. Long Hospital, including the EMS records at Exhibit J-2 (Doc. 8-5, p. 41/53; Doc. 8-2, pp. 81-83/92).  Coutee argued the nurse's record stated Coutee was falling asleep during the medical interview and was unable to discuss or to sign his name (Doc. 8-5, p. 43/53; Doc. 8-2, pp. 83/92).  The State pointed out that the discharge summary showed Coutee's vital signs as, "No sensory deficits, motor strength in all extremities, awake, alert and oriented as to person, place and time" (Doc. 8-5, p. 43-44/53).

Coutee told the hospital personnel he had smoked crack and was having chest pain (Doc. 8-6, pp. 15/63, 18/63).  The medical records admitted at the hearing showed that Coutee told the EMS and medical personnel he had smoked cocaine just prior to admission in the hospital and showed that Coutee had a burn on his left index finger (Doc. 8-6, pp. 4/63-63/63).  The EMS record showed Coutee was oriented and conversing (Doc. 8-2, Tr. p. 81/92).  The physician's medical records indicated that Coutee's neurological and musculoskeletal exams were normal (Doc. 8-6, p. 19/63), and the diagnosis was "rhabdomyolysis secondary to cocaine" (Doc. 8-6, pp.

22/63, 25/63).[2]

The trial judge found the medical evidence did not prove Coutee had ingested crack cocaine (Doc. 8-5, p. 50/53), but that, even if Coutee had ingested crack cocaine, he was not intoxicated to a degree that would render him unconscious or nullify his comprehension (Doc. 8-5, pp. 50-51/53).

The Louisiana Third Circuit Court of Appeal reviewed this claim on direct appeal and found the State met its burden of proving that Coutee's inculpatory statement was freely and voluntarily given. State v. Coutee, 970 So.2d at 83.

The statement Coutee complains of is his statement to the police as to where they could find the stolen items in the residence. In order for a defendant to establish that his confession was involuntary, he must demonstrate that it resulted from coercive police conduct and there was a link between the coercive conduct of the police and his confession. U.S. v. Bell,

---

[2] Rhabdomyolysis is "the destruction or degeneration of skeletal muscle tissue (as from traumatic injury, excessive exertion, or stroke) that is accompanied by the release of muscle cell contents (as myoglobin and potassium) into the bloodstream resulting in hypovolemia, hyperkalemia, and sometimes acute renal failure." MEDLINEplus Health Information, Merriam-Webster Medical Dictionary: "rhabdomyolysis," at http://www.nlm.nih.gov/mplusdictionary.html (a service of the U.S. National Library of Medicine and the National Institutes of Health). One of the risk factors for rhabdomyolysis is use or overdose of drugs, especially cocaine, amphetamines, statins, heroin, or PCP. MEDLINEplus Health Information, Encyclopedia: "Rhabdomyolysis," at http://www.nlm.nih.gov/mplus/ency/article/000473.htm (a service of the U.S. National Library of Medicine and the National Institutes of Health).

367 F.3d 452, 461 (5th Cir. 2004).  Any statement given freely and voluntarily without any compelling influences is admissible in evidence.   The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated.  Volunteered statements of any kind are not barred by the Fifth Amendment.  Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682 (1980), citing Miranda v. Arizona, 384 U.S. 436, 478, 86 S.Ct. 1602, 1630 (1966).

Intoxication renders a statement involuntary only when the intoxication is of such a degree that it negates the defendant's comprehension and renders him or her unconscious of the consequences of what he or she is saying.  State v. Narcisse, 426 So.2d 118, 125 (La. 1983), cert. denied, 464 U.S. 865, 104 S.Ct. 202 (1983), and cases cited therein.  Also, State v. Manning, 2003-KA-1982 (La. 10/19/04), 885 So.2d 1044, 1074, cert. den., 544 U.S. 967, 125 S.Ct. 1745 (2005).  However, the mere fact of drug or alcohol intoxication is insufficient standing alone to render a confession involuntary.  See State v. Davis, 92-1623 (La. 5/23/94), 637 So.2d 1012, 1023-1024, cert. denied, 513 U.S. 975, 115 S.Ct. 450 (1994)(confession voluntary although defendant smoked several rocks of cocaine about 24 hours before he confessed).  Whether intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact.  Narcisse,

426 So.2d at 126.

There was no evidence adduced at the hearing to show the police questioned Coutee or asked him where the stolen property was; instead Coutee volunteered that information to the police, even attempting to do so before he was Mirandized. Although Coutee was in custody, he was not being interrogated. Therefore, Miranda did not apply to Coutee's voluntary statements.

However, even if Miranda applied, the state courts' finding, that Coutee failed to prove he was intoxicated to a level which precluded him from knowingly waiving his Miranda rights and making his statement freely and voluntarily, was not an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding. Therefore, Coutee's argument that he did not knowingly and intelligently waive his Miranda rights is meritless.

Next, Coutee contends the trial judge erred in relying on the hearsay report of an intake triage nurse instead of the diagnosis of a physician/expert. The transcript of the hearing on Coutee's motion to suppress does not show that the trial judge relied on a report by an intake nurse. The trial judge did not refer to any specific medical report in his reasons for denying the motion to suppress. Therefore, Coutee's complaint that the trial judge erred in relying on a hearsay report by a nurse has no basis in fact.

Finally, Coutee contends the trial judge erred in denying

Coutee's motion to suppress his inculpatory statement and illegally seized evidence when a known fraud on the court led the judge to believe Coutee was not intoxicated or in medical distress and voluntarily waived his Miranda rights. Coutee contends the three veteran police officers testified falsely when they testified that Coutee did not appear to be under the influence of drugs. Coutee contends the fraudulent testimony is proven by the fact that the officers called emergency medical services for Coutee and told them Coutee was suffering from "poisoning/overdose," as noted in the EMS report (Doc. 8-2, p. 81/92). However, that report indicates that Coutee himself told the EMS officers he had chest pains and had just smoked crack. Therefore, the EMS report does not show the police officers testified falsely to the court or that the prosecutor knowingly introduced false testimony.

This ground for relief is meritless.

Ground 7 - Vehicle Search

Coutee contends his attorney was ineffective for failing to move to suppress evidence illegally seized from his vehicle, a brown Suburban, for failing to show with the medical records that the officers committed perjury, and for failing to move to suppress admission of blood from the crime scene into evidence.

As previously discussed, the medical records did not show the testifying officers committed perjury. Therefore, Coutee did not have ineffective assistance of counsel in this respect.

18

Coutee also has not shown his counsel was ineffective with respect to the vehicle search. Sergeant Gleason testified that he had been contacted by someone who complained her vehicle had been taken by Coutee and provided information of Coutee's possible location in the area; a warrant had previously been issued for Coutee for unauthorized use of that vehicle (Doc. 8-5, pp. 32-33/53). Coutee was arrested on that outstanding warrant, which was unrelated to the later armed robbery charge, and the vehicle he had taken was searched.

Coutee complains that "his" vehicle was illegally searched. However, the vehicle was not owned by Coutee and, according to the arrest warrant, he was not authorized to use it. A person knowingly in possess of a stolen vehicle does not have an objectively reasonable expectation of privacy in the vehicle. State v. Jackson, 42 So.2d 368, 372 (La. 2010). Therefore, Coutee did not have standing to object to the search of the vehicle. Coutee's attorney did not err by failing to object to the search a vehicle in which Coutee had no reasonable expectation of privacy. See Murray v. Maggio, 736 F.2d 279, 283 (5th Cir. 1984)(counsel is not required to engage in the filing of futile motions; collecting cases).

Coutee further contends his attorney was ineffective for failing to show, with the medical records, that the officer committed perjury when they testified that Coutee did not appear to

19

be under the influence of drugs.  As discussed above, the EMS report shows Coutee himself told the EMS officers he had smoked crack.  Therefore, the medical records do not prove the officers committed perjury, and Coutee's attorney was not ineffective for failing to make that argument.

Coutee also argues his attorney should have moved to suppress the admission of two cotton swabs of blood collected at the location of the armed robbery, since Coutee testified he was not injured or bleeding (Doc. 8-3, Tr. pp. 73-74/83, 80/83).  Detective Constantino testified at trial that, although he collected the blood from the crime scene, he did not have the blood tested so he did not know who the blood came from (Doc. 8-3, Tr. p. 81/83). Therefore, the introduction of the blood into evidence did not prove anything and Coutee was not prejudiced by it.

This argument is meritless.

<u>Ground 8 - Cumulative Errors</u>

Finally, Coutee contends the trial judge erred in failing to prevent the prosecutor's repeated improprieties, and the accumulation of trial errors denied Coutee the right to a fair and impartial trial.  Since Coutee has failed to prove there were any errors committed at his trial, this argument has no basis in fact and is meritless.

Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that

20

Coutee's habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a**

memorandum setting forth arguments on whether a certificate of appealability should issue. *See* 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in Alexandria, Louisiana on the 6th day of December, 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE